Emily Cooper OSB# 182254
Thomas Stenson OSB # 152894
Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205
(503) 243-2081
ecooper@droregon.org
tstenson@droregon.org
*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **D.W.,**<br>Plaintiff,<br><br>v.<br><br>**FRESENIUS MEDICAL CARE NORTH AMERICA**, Defendant. | Case No.: 3:21-cv-571<br><br>COMPLAINT<br><br>Civil Rights Action (Americans with Disabilities Act, 42 USC 12182 et seq., Rehabilitation Act, 29 USC 794) |

This is an action to enforce the obligations of a health care corporation to provide non-discriminatory services to people with disabilities. Federal nondiscrimination law prohibits discriminating against people with disabilities, including by providing reasonable modifications in policies and practices.

Plaintiff D.W.[1] is an individual with multiple disabilities. He is in kidney failure and requires regular dialysis services at a facility operated by the Defendant. Defendant recently

---

[1] D.W. is the pseudonym used to protect the plaintiff's privacy. A corresponding motion to proceed under a pseudonym will be filed shortly after the complaint's filing.

Plaintiff's Complaint
Page 1

announced that it would involuntarily discharge D.W. from services at their facility because of his behavior, which is related to and a product of his disability. Fresenius reported in the discharge summaries that his behaviors mostly consist of verbal outbursts. Plaintiff, through counsel, approached Defendant about discussing accommodations to address Defendant's concerns and to readmit D.W., at least temporarily, to care. The defendant corporation received the request and, through counsel, refused to participate in such discussions.

Plaintiff has no other dialysis center that will currently serve him, and Defendant discharged him from services knowing that no other dialysis center had admitted him to care. Without dialysis, Plaintiff will die. Defendant Fresenius has discharged Plaintiff from all services as of April 13, 2021. This Court should act to ensure that Plaintiff will not die from disability discrimination.

## I.    PARTIES

1. D.W. is a 53-year-old man who resides in Astoria, Oregon, in Clatsop County.

2. Fresenius Medical Care North America is a foreign business corporation registered by the state of Delaware, whose primary place of business is in Waltham, Massachusetts. It operates by and through numerous wholly-owned subsidiary corporations, several registered in Oregon.

## II.    JURISDICTION AND VENUE

3. This case raises claims under various federal statutes and rules relating to federal nondiscrimination law. All claims raised are within the federal subject matter jurisdiction of a United States District Court under 28 U.S.C. 1331 & 28 U.S.C. 1343.

4. The Defendant operates multiple clinics in the state of Oregon. The events relating to this matter took place in Astoria and in St. Helens, in the state of Oregon. The dispute specifically relates to the operation of the Defendant's St. Helens and Astoria facilities. Astoria is in Clatsop

County, Oregon. St. Helens is in Columbia County, Oregon. Venue is appropriate in the district of Oregon. 28 U.S.C. 1391(e)(1). Divisional venue is appropriate in the Portland Division. LR 3-2.

5. The federal district court has subject matter jurisdiction over this claim to enforce federal non-discrimination law over a private facility.

### III. STATEMENT OF FACTS

#### A. Fresenius's Operation of a Federally-Funded Place of Public Accommodation

6. Fresenius operates a global corporate for-profit business that, among other functions, "provide[s] dialysis care and related services to persons who suffer from end-stage renal disease." Fresenius is, per its own public filings, "the world's largest kidney dialysis company."[2]

7. Based on review of its website and knowledge of its operations, Fresenius is generally open to the public, though some people receiving services from Fresenius may first need a referral or prescription from a physician to begin treatment.

8. Some services offered at both the St. Helens and Astoria location, such as the "Kidney Disease Education Class" are open to the general public without a referral or prescription. The websites for both locations list hours of operations and the services and amenities offered at each site. These clinics are community-based clinics are centrally located in cities and towns. Patients, once admitted to care, can walk in and out and over the course of months or years of care, unlike

---

[2] Allegations in this section are drawn from Fresenius's parent corporation's public SEC filing of July 2020, published on the Fresenius Medical Care website and from Fresenius's internal analysis of its financials for the second quarter of 2020. Fresenius Medical Care AG & Co. KGaA, Sec. & Exchange Comm'n Form 6-K (July 2020), *available at* https://www.freseniusmedicalcare.com/fileadmin/data/com/pdf/investors/News___Publications/Financial_Report/2020/Q2_2020_6K.PDF; Fresenius Medical Care, Q2 202 Conference Call Analyst Presentation (July 30, 2020), *available at* https://www.freseniusmedicalcare.com/fileadmin/data/com/pdf/News/2020/FME_Q2_2020_Analyst_Presentation.pdf.

Plaintiff's Complaint
Page 3

hospitals that are typically more restricted in their access and require patients go through a separate admission process every time they come to the hospital.

9. As of June 30, 2020, Fresenius's global parent corporation owned, operated, or managed 4,036 dialysis clinics, 2614 of which are in North America. It had treated 347,683 patients in the 12 months prior to that date, administering more than 26 million dialysis treatments in that time.

10. At Defendant's individual service locations, including Oregon locations in Astoria and St. Helens, patients can receive dialysis inside their buildings, which usually entails drawing blood in a continuous process from the patient over the course of hours, filtering impurities, toxins, excess water, and other undesired elements from the blood. Filtered blood is returned to the patient in a continuous cycle over the course of several hours.

11. Fresenius receives about 33% of its consolidated revenue from U.S. federally-funded health care programs, such as Medicaid and Medicare.

12. Fresenius also received $277M in funds from the federal government as part of the COVID relief/stimulus funding over the last year. During that same time Fresenius reported generating $10.16 billion in revenue from January 1, 2020 to June 30, 2020, 31.5% percent (or $3.2 billion) of which was gross profit.

13. Although Fresenius has registered numerous different subsidiary corporations within Oregon associated with its Fresenius Medical Care North America body, its website indicates that all "Fresenius Kidney Care dialysis centers are part of Fresenius Medical Care North America (FMCNA)," including both the Astoria and St. Helens locations.[3]

---

[3] Sites describing both the St. Helens and Astoria locations host identical descriptions. "Different names, same great care: Fresenius Kidney Care dialysis centers are part of Fresenius Medical Care North America (FMCNA). Some centers may be known as Fresenius Kidney Care or Fresenius Medical Care, as well as other names. Every center listed in our dialysis finder results is part of the Fresenius Kidney Care dialysis network." Fresenius Kidney Care, Fresenius Kidney

Plaintiff's Complaint
Page 4

B. *D.W.'s Underlying Disabilities*

14.     D.W. has multiple complex disabilities that interact in ways that require unique accommodation and consideration.

15.     D.W. is in active kidney failure. He requires ongoing dialysis to live. Based on his assessment by his nephrologist, D.W. will die if not allowed regular dialysis services.

16.     D.W. has an intellectual disability, with a functional IQ of 64. Because of this intellectual disability, D.W. has difficulty processing concepts in a way other people may not. He may have difficulty anticipating other people's responses, regulating his emotions, and avoiding impulsive behaviors.

17.     D.W. also experienced a series of major strokes more than 20 years ago. These strokes have severely damaged the tissue of his brain, contributing to D.W.'s impulsive behaviors, aggression, and anger.

18.     D.W. is also prone to seizures.

C. *D.W.'s Enrollment with Fresenius's Astoria Location*

19. D.W. began receiving services from Fresenius at the Astoria location in November 2018. Fresenius staff were aware that D.W. had substantial mental health and behavioral health needs at least as early as 2018.

20. D.W. had periodic verbal outbursts directed at staff during his time at the Astoria location. These long-standing behavioral needs and their link to his disability were well-known to Fresenius staff at the Astoria location for years. Fresenius staff had labeled him in medical

---

Care St. Helens, *at* https://www.freseniuskidneycare.com/dialysis-centers/oregon/5476;
Fresenius Kidney Care, Fresenius Kidney Care Astoria, *at*
https://www.freseniuskidneycare.com/dialysis-centers/oregon/4683.

Plaintiff's Complaint
Page 5

records as having schizophrenia and anxiety, though it is unclear what basis they had for asserting those particular diagnoses.

21. On May 6, 2020, Fresenius staff responded to a verbal outburst by D.W. by calling the police to have him removed from the property. D.W. had not harmed anyone. The staff report of the incident stated D.W. was "cursing and visibly agitated."

22. He returned for his next dialysis appointment on May 11, 2020. According to Fresenius records, the staff social worker on that day "presented" him with a letter "of expected behaviors and how staff will work with him if he has a hard time."

23. On May 21, 2020, per Fresenius records, a nurse reported to a social worker that D.W. was "acting up." The nurse had been speaking with D.W. and asked for clarification of something he had said. He "became mad," according to the records.

24. On subsequent visits to the Astoria clinic in May 2020, the social worker discussed in her notes undefined "aggressive behaviors," "being verbally inappropriate with staff," and "disruptive behaviors" with D.W. but did not offer any substantial accommodations for his behavioral needs, beyond reminding him that he had to obey the rules.

25. On May 29, 2020, the medical director and facility administrator for Fresenius's Astoria facility presented D.W. with a notice of discharge, claiming that he had had outbursts in May 2020 including "yelling, cursing, and making derogatory comments to staff," as well as "hitting the door of the facility administrator's office."

26. The notice listed the accommodations offered to D.W. as "the ability to pick [his] chair and treatment time," and sometimes the technician he would work with. It also stated that the staff had warned him about complying with the rules.

    D.  *D.W.'s Experience at the St. Helens Location*

27. In September 2020, D.W. was admitted to care at Fresenius's St. Helens location. Fresenius informed D.W. in a September 8, 2020 letter that it expected him to comply with rules and notify staff before he became angry and upset. He received regular dialysis there for months without apparent incident.

28. On March 9, 2021, D.W. was undergoing dialysis at the Fresenius St. Helens location. As part of the monitoring process, staff had put an automatic blood pressure cuff on his arm that would inflate at intervals to measure his blood pressure and other vital signs. D.W. was present with one of his in-home care providers, who is not employed by Fresenius.

29. The blood pressure cuff began to inflate and deflate rapidly, apparently improperly, cutting off circulation to his arm and causing extreme discomfort. He called for staff to assist him. He asked his in-home care provider to assist him. A Fresenius staffer, alerted to his concerns, stated that she would help him after she helped another patient, then left the room.

30. D.W. got upset and yelled because he was in discomfort and could not get anyone to assist him.

31. This outburst arose after D.W. did exactly Fresenius had requested of him—notifying Fresenius staff of a circumstance that was provoking him before he lost his temper—and Fresenius staff declined to respond. The nominal accommodation offered to him was not even followed through on by the provider when he complied with Fresenius's request.

32. Fresenius alleged that staff observed D.W. attempt to strike his in-home care worker during this outburst on March 11, 2021. However, that worker has denied that any attempt to strike her took place, and her report on the incident does not describe any attempt to strike her.

33. On March 13, 2021, Fresenius St. Helens sent D.W. another discharge letter. The letter alleged that he "cursed, yelled, and attempted to strike [his] care worker." The letter claimed that

Fresenius had accommodated him by offering him a schedule for the 90-minute journey to St. Helens that would accommodate him bringing his in-home care worker with him. The letter also claimed Fresenius had contacted other agencies in order to develop a more holistic approach to D.W.'s care, though it does not indicate that any changes or accommodations followed from those contacts.

34. This discharge letter told D.W. that: "you need to have your care managed by a Mental Health provider where you follow their suggestions to manage your health care before placement in an outpatient dialysis clinic will be appropriate."

35. The letter then stated that Fresenius would provide a list of local outpatient dialysis clinics from which he could seek treatment, notwithstanding its statement in the prior paragraph that such a placement was not appropriate.

36. The letter further advised him of the address of the local hospital in Astoria (which does not provide dialysis services). The nearest hospitals with dialysis services are in Longview, Washington and in Portland. Both dialysis services would be accessible only by admission through the emergency department and could not provide routine dialysis for him.

37. Following its submission of the discharge letter, Fresenius did not participate meaningfully in any efforts to find a new site for D.W. to get care.

38. Despite Fresenius's declarations that D.W.'s behaviors precluded his participation in dialysis services, he attended dialysis without incident after March 9 through April 13 three times a week without incident.

39. Several outpatient dialysis facilities in the area refused to accept D.W. because of the negative reports from Fresenius regarding his behavior.

Page 8

40. Clinicians treating D.W. reached out to Fresenius staff subsequent to his discharge notice, explaining that D.W. "will die within 2-4 weeks of not being dialyzed," noting that his behaviors were consistent with his underlying disability.

41. His clinical staff asked Fresenius to participate in a call on April 9, 2021 to outline potential accommodations for D.W. that would allow him to continue to participate. Fresenius agreed to participate in the group call, then withdrew from it.

42. Disability Rights Oregon reached out to Fresenius through multiple avenues to advocate for his rights.

43. On April 12, 2021, Katelynn Hemmele, an area administrator from Fresenius, wrote to DRO indicating that she would not consider reasonable accommodations such as increased staffing during D.W.'s dialysis or a behavior plan to support him. She stated that she knew that DW "has been rejected by the available clinics" in the area.

44. Ms. Hemmele refused to consider postponing the termination of his services to allow for an interactive process to discuss such accommodations that might assist D.W. or to allow him to look for new services.

45. On April 13, 2021, D.W. was discharged from care at Fresenius's St. Helens location. He does not have a current provider of dialysis services.

## IV.   CLAIMS

### Claim I: Disability Discrimination by a Place of Public Accommodation under the Americans with Disabilities Act (42 U.S.C. 12181 *et seq.*)

46. Under Title III of the Americans with Disabilities Act (ADA), no "individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods

services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. 12182(a); 28 CFR 36.201(a).

47. The prohibition on discrimination includes the "failure to make reasonable modifications in policies, practices, or procedures . . . necessary to afford such . . . services . . . to individuals with disabilities." 42 U.S.C. 12182(b)(2)(A)(ii); 28 CFR 36.302(a).

48. The prohibition on discrimination also includes the "denial of the opportunity of the individual . . . to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. 12182(b)(1)(A)(i); 28 CFR 36.202(a).

49. Title III of the ADA also requires that services from places of public accommodation be administered in the most integrated setting. 42 U.S.C. 12182(b)(1)(B); 28 CFR 36.203.

50. Fresenius owns, manages, and operates clinics throughout the United States, including the Astoria and St. Helens clinics. ¶¶ 6-10. These clinics are open to the public and affect commerce, as they are the "professional office[s] of a health care provider" or otherwise are "service establishment[s]." 42 U.S.C. 12181(7); 28 CFR 36.104. ¶¶ 6-13.

51. D.W. is a person with a disability within the meaning of the ADA, because he is a person with both physical and mental impairments that substantially limit one or more of his major life activities. 42 U.S.C. 12102; 28 CFR 36.105. ¶¶ 14-18. His intellectual disability affects the way he thinks and substantially limits his brain function. 28 CFR 36.105(c)(1)(i); 28 CFR 36.105(d)(2)(iii)(C). ¶¶ 14-18. Multiple disabilities affect the way he "interact[s] with others." 28 CFR 36.105(c)(1)(i). ¶¶ 14-18. His kidney failure is an impairment of a major bodily function. 28 CFR 36.105(c)(1)(ii). ¶¶ 14-18.

52. Fresenius has discriminated against D.W. because of his disability-related behaviors and prohibited him from participating in the services it offers and accessing the facilities it operates,

by discharging him from both the Astoria and St. Helens facilities.  ¶¶ 16-35, 45. Fresenius's response to him, by urging him to seek mental health care, recognizes and admits that his behaviors are related to his disability. ¶35. His behaviors, as reported in Fresenius's own documents, largely consist of verbal outbursts that, while unpleasant, are manageable in that setting. ¶¶16-35.

53. Fresenius has discriminated against D.W. by refusing to offer reasonable accommodations for his disability-related behaviors. ¶¶19-45. D.W. has proffered several reasonable accommodations, including increased staffing, requirements that staff pay closer attention to him while he is in dialysis, and engaging in behavior planning, but Fresenius has refused any further discussions of any accommodations. ¶¶33-45.

54. D.W. has not been able to identify any other dialysis site that will serve him, in part because of Fresenius spreading exaggerated and fabricated stories about his behaviors among other providers. To the extent that D.W.'s remaining options, other than death, involve getting less frequent, less effective services through a hospital emergency department, hospitals are not the most integrated setting relative to a community-based outpatient dialysis facility. ¶¶ 7-10, 36. Compelling D.W. to seek medical care in a less integrated setting is discrimination that violates the ADA's integration mandate.

55. Fresenius has denied D.W. any meaningful, effective reasonable accommodation. ¶¶19-45. Fresenius has barred him from receiving services on the basis of his disability and his disability-related behaviors. ¶¶19-45. Without action from this court, D.W. will likely die as a result of this disability discrimination. ¶40.

### Claim II: Disability Discrimination by a Federally-Funded Program or Activity Under the Rehabilitation Act (29 USC 794).

56. No "program or activity" receiving "federal financial assistance" may discriminate against a person with a disability by "excluding" them "from participation in, den[ying] the benefits of" the program or activity, or otherwise subjecting them to discrimination. 29 USC 794(a).

57. Fresenius is a "program or activity" that receives federal assistance. ¶¶ 6-13 Specifically, Fresenius is a corporation or other business "which is principally engaged in the business of providing . . . health care." 29 USC 794(b)(3)(A)(ii); 45 CFR 84.3(k)(3)(i)(B). ¶¶ 6-13.

58. Fresenius receives "Federal financial assistance from the Department of Health and Human Services" because it receives Medicaid and Medicare funds. 45 CFR 84.2. ¶¶ 6-13. It has also received federal stimulus funds. ¶¶ 6-13.

59. Discrimination prohibited by the Rehabilitation Act for those receiving U.S. Department of Health and Human Services funds includes "deny[ing] a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service." 45 CFR 84.4(b)(1)(i).

60. Discrimination prohibited by the Rehabilitation Act for those receiving U.S. Department of Health and Human Services funds includes "deny[ing] a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service." 45 CFR 84.4(b)(1)(i).

61. Recipients of U.S. Department of Health and Human Services funds for health services purposes must "[m]odify. . . any policies or practices that" have discriminatory effects. 45 CFR 84.6(c)(ii).

62. Recipients of U.S. Department of Health and Human Services funds for health services purposes must provide "aids, benefits, and services . . . in the most integrated setting appropriate to the person's needs." 45 CFR 84.4(b)(2).

63. D.W. is a "person with a disability" or a "handicapped person" within the meaning of the Rehabilitation Act. 29 USC 705(20); 45 CFR 84.3(j). ¶¶ 14-19. The definition of a "person with a disability" or "handicapped person" is substantially similar to that definition under the ADA. 29 USC 705(20)(B) (definition includes "any person with a disability" as defined in 42 USC 12102); ¶¶ 14-19, 51.

64. Fresenius has discriminated against D.W. because of his disability-related behaviors and prohibited him from participating in the services it offers and accessing the facilities it operates. ¶¶19-45

65. Fresenius has discriminated against D.W. by refusing to modify its practices to afford reasonable accommodations to D.W. for his disability-related behaviors. ¶¶19-45.

66. To the extent that D.W.'s remaining options, other than death, involve getting less frequent, less effective services through a hospital emergency department, hospitals are not the most integrated setting relative to a community-based outpatient dialysis facility. ¶¶6-10, 36. To the extent Fresenius's compels D.W. to seek care in a hospital setting or other less integrated setting, this would violate the "most integrated setting" requirement of the Rehabilitation Act.

## V.     CLAIMS FOR RELIEF

67. In light of the above described violations of law, the plaintiff respectfully requests that the Court enter an order:

   A. compelling Fresenius to re-admit D.W. to its dialysis services;

   B. compelling Fresenius to engage in an interactive and ongoing accommodation process to ensure D.W.'s ongoing benefits from its dialysis services;

   C. compelling Fresenius to alter its policies, practices, trainings, and quality assurance/quality improvement processes on involuntary discharge related to patient

      behavior, in a manner that clearly addresses how to accommodate the needs of patients with disabilities with behavioral symptoms and that uses standards consistent with federal nondiscrimination law;

D. awarding nominal damages to D.W. as an equitable remedy;

E. declaring that the plaintiff is a prevailing party;

F. granting reasonable attorney's fees and costs to the plaintiff; and

G. granting other such appropriate relief as this Honorable Court deems just and proper.

DATED this 16th day of April, 2021.

                              DISABILITY RIGHTS OREGON

                              /s/ Thomas Stenson
                              Emily Cooper OSB# 182254
                              ecooper@droregon.org
                              Thomas Stenson, OSB 152894
                              tstenson@droregon.org
                              511 SW 10th, Suite 200
                              Portland OR 97205
                              Tel:   (503) 243 2081
                              FAX:  (503) 243 1738
                              *Counsel for Plaintiff*